1  CHARLES V. BERWANGER (SBN: 047282)
   cberwanger@grsm.com
2  ANDREA K. SCRIPPS (SBN: 235375)
   ascripps@grsm.com
3  GORDON REES SCULLY MANSUKHANI, LLP
   101 W. Broadway, Suite 2000
4  San Diego, CA 92101
   Telephone: (619) 230-7784
5  Facsimile: (619) 696-7124

6  Attorneys for Plaintiffs
   NICOLE UHLIG AND MICHELLE STOLDT, AS TRUSTEES OF (1) THE
7  SURVIVOR'S TRUST ESTABLISHED UNDER THE WOLFGANG AND
   ELKE UHLIG REVOCABLE LIVING TRUST U/A/D APRIL 16, 1998; (2)
8  THE MARITAL GST NON-EXEMPT TRUST ESTABLISHED UNDER THE
   WOLFGANG AND ELKE UHLIG REVOCABLE LIVING TRUST U/A/D
9  APRIL 16, 1998, AS AMENDED; (3) THE MARITAL GST EXEMPT TRUST
   ESTABLISHED UNDER THE WOLFGANG AND ELKE UHLIG
10 REVOCABLE LIVING TRUST U/A/D APRIL 16, 1998, AS AMENDED; AND
   (4) THE BYPASS TRUST ESTABLISHED UNDER THE WOLFGANG AND
11 ELKE UHLIG REVOCABLE LIVING TRUST U/A/D APRIL 16, 1998, AS
   AMENDED

12                UNITED STATES DISTRICT COURT

13              SOUTHERN DISTRICT OF CALIFORNIA

14

15 NICOLE UHLIG AND MICHELLE            ) **CASE NO. 20-CV-00887-**
   STOLDT, AS TRUSTEES OF (1) THE       ) **DMS-MSB**
16 SURVIVOR'S TRUST ESTABLISHED         )
   UNDER THE WOLFGANG AND ELKE          ) *Action Filed: May 13, 2020*
17 UHLIG REVOCABLE LIVING TRUST         )
   U/A/D APRIL 16, 1998; (2) THE MARITAL ) *Judge: Hon. Dana M. Sabraw*
18 GST NON-EXEMPT TRUST                 ) *Magistrate: Hon. Michael S. Berg*
   ESTABLISHED UNDER THE                )
19 WOLFGANG AND ELKE UHLIG              )
   REVOCABLE LIVING TRUST U/A/D         )
20 APRIL 16, 1998, AS AMENDED; (3) THE  ) **FIRST AMENDED**
   MARITAL GST EXEMPT TRUST             ) **COMPLAINT FOR**
21 ESTABLISHED UNDER THE                ) **(1) BREACH OF CONTRACT**
   WOLFGANG AND ELKE UHLIG              ) **(SPECIFIC**
22 REVOCABLE LIVING TRUST U/A/D         ) **PERFORMANCE);**
   APRIL 16, 1998, AS AMENDED; AND (4)  ) **(2) BREACH OF CONTRACT**
23 THE BYPASS TRUST ESTABLISHED         ) **(IN THE ALTERNATIVE,**
   UNDER THE WOLFGANG AND ELKE          ) **DAMAGES); AND**
24 UHLIG REVOCABLE LIVING TRUST         ) **(3) FRAUD**
   U/A/D APRIL 16, 1998, AS AMENDED,    )
25                                      ) **JURY TRIAL IS DEMANDED**
                     Plaintiffs,        )
26                                      )
   vs.                                  )
27                                      )
   FAIRN & SWANSON HOLDINGS, INC. a     )
28 Delaware Corporation; LEON FALIC, an )

─────────────────────────────────────────────
FIRST AMENDED COMPLAINT      -1-      Case No. 20-CV-00887-DMS-MSB

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1  individual; SIMON FALIC, an individual; )
   JEROME FALIC, an individual; and DOES 1 )
2  through 20, inclusive, )
   )
3                          Defendants. )

4

5      Plaintiffs, NICOLE UHLIG AND MICHELLE STOLDT, AS TRUSTEES

6  OF (1) THE SURVIVOR'S TRUST ESTABLISHED UNDER THE WOLFGANG

7  AND ELKE UHLIG REVOCABLE LIVING TRUST U/A/D APRIL 16, 1998; (2)

8  THE MARITAL GST NON-EXEMPT TRUST ESTABLISHED UNDER THE

9  WOLFGANG AND ELKE UHLIG REVOCABLE LIVING TRUST U/A/D

10 APRIL 16, 1998, AS AMENDED; (3) THE MARITAL GST EXEMPT TRUST

11 ESTABLISHED UNDER THE WOLFGANG AND ELKE UHLIG REVOCABLE

12 LIVING TRUST U/A/D APRIL 16, 1998, AS AMENDED; AND (4) THE

13 BYPASS TRUST ESTABLISHED UNDER THE WOLFGANG AND ELKE

14 UHLIG REVOCABLE LIVING TRUST U/A/D APRIL 16, 1998, AS

15 AMENDED, by and through their attorneys of record allege and pray as follows:[1]

16                                  **I.**

17 **GENERAL ALLEGATIONS, JURISDICTION, PARTIES, AND VENUE**

18      1.     Jurisdiction herein is based upon the diversity of the parties as

19 provided by 28 USC section 1332.  The domiciles of the parties are as follows:

20           a.     Plaintiffs, NICOLE UHLIG AND MICHELLE STOLDT, AS

21      TRUSTEES OF (1) THE SURVIVOR'S TRUST ESTABLISHED UNDER

22      THE WOLFGANG AND ELKE UHLIG REVOCABLE LIVING TRUST

23      U/A/D APRIL 16, 1998; (2) THE MARITAL GST NON-EXEMPT TRUST

24      ESTABLISHED UNDER THE WOLFGANG AND ELKE UHLIG

25      REVOCABLE LIVING TRUST U/A/D APRIL 16, 1998, AS AMENDED;

26

27 [1] A redlined copy of the First Amended Complaint is attached hereto as "Exhibit
   2."

28

---

FIRST AMENDED COMPLAINT          Case No. 20-CV-00887-DMS-MSB

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

(3) THE MARITAL GST EXEMPT TRUST ESTABLISHED UNDER THE WOLFGANG AND ELKE UHLIG REVOCABLE LIVING TRUST U/A/D APRIL 16, 1998, AS AMENDED; AND (4) THE BYPASS TRUST ESTABLISHED UNDER THE WOLFGANG AND ELKE UHLIG REVOCABLE LIVING TRUST U/A/D APRIL 16, 1998, AS AMENDED, bring this proceeding in their capacities as trustees of the identified trusts here from the caption. The trustees are domiciled in California.

      b.     Defendant Fairn & Swanson Holdings, Inc. ("Holdings") is a Delaware corporation whose headquarters, plaintiffs are informed and believe, are located in Florida.

      c.     Defendant Simon Falic is an individual domiciled in Panama.

      d.     Defendant Leon Falic is an individual domiciled in Florida.

      e.     Defendant Jerome Falic is an individual domiciled in Florida. (Herein, the three individual defendants are referred to jointly as the "Individual Defendants.")

      2.     Plaintiffs are ignorant of the true names and capacities of DOES 1 through 20, inclusive, and/or are ignorant of the facts giving rise to their liability and will amend this complaint once their identities have been ascertained as well as the facts giving rise to their liability. These defendants were agents, servants and employees of each of the other named defendants and were acting at all times within the full course and scope of their agency and employment, with the full knowledge and consent, either expressed or implied, of their principal and/or employer and each of the other named defendants. Each of the defendants had approved or ratified the actions of the other defendants, thereby making the currently named defendants liable for the acts and/or omissions of their agents, servants and/or employees.

      3.     The amount in controversy is substantially in excess of $15,000,000 exclusive of interest and costs, as alleged herein.

FIRST AMENDED COMPLAINT      Case No. 20-CV-00887-DMS-MSB

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

4. This action arises out of the breach by defendants Holdings, and the Individual Defendants of the binding letter of intent entered into by them with plaintiffs on or about March 4, 2020. (Herein, "2020 Binding LOI," a true and correct copy of which is attached hereto and marked "Exhibit 1.") By the 2020 Binding LOI plaintiffs agree to convey to Holdings or its "successors and assigns" 80% of the stock in closely held Fairn & Swanson, Inc. ("F&S") a California Corporation, and all right, title, and interest in plaintiffs' retail real property located in Imperial County, California. (Individual Defendants own the remaining 20% of F&S's stock either directly or through a controlled entity.) In return, Holdings agrees to assume specified debts of F&S; to purchase the Imperial County property; and to pay plaintiffs $5 million. By the 2020 Binding LOI the transaction was to close on or before the end of March, 2020. The Binding LOI is to be performed in California.

5. Venue is proper in the Southern District of California because the real property is located in Imperial County, California and such real property is a substantial component of this litigation. Among the relief sought here is the specific performance of the 2020 Binding LOI requiring defendants to consummate the purchase of the Imperial County, California property.

6. At all times during the negotiations with defendants culminating in execution of the 2020 Binding LOI, and as was well-known by defendants, and each of them, F&S was in substantial financial distress and plaintiffs' 80% stock holding interest was in the process of being marketed to third parties. The Individual Defendants for themselves and through Holdings signed the 2020 Binding LOI conditioned on all marketing efforts ceasing. Upon the execution of the 2020 Binding LOI plaintiffs terminated their marketing efforts understanding that the 2020 Binding LOI transaction would close in the immediate future.

7. Defendants having obtained F&S's cessation of marketing efforts and being fully aware of F&S's financial distress thereupon at first insisted that the

FIRST AMENDED COMPLAINT          Case No. 20-CV-00887-DMS-MSB

purchase price provided by the 2020 Binding LOI be substantially reduced and immediately thereafter refused to consummate the transaction. The 2020 Binding LOI provides that the parties will make good faith efforts to negotiate one or more "Definitive Agreements" further detailing the terms of the sale of stock and the terms of the sale of the Imperial County property, but expressly provides that it, the 2020 Binding LOI, "is not contingent on the preparation of the Definitive Agreements." The Definitive Agreement for the purchase by Defendants of F&S stock *prepared and proposed by Defendants* ("Definitive Agreement") names the Individual Defendants as the buyers of F&S stock in lieu of Holdings. The change in the named buyers of the F&S stock from Holdings to the Individual Defendants conclusively evidences an assignment by Holdings and the Individual Defendants of the rights and obligations imposed on the buyer under the 2020 Binding LOI to the Individual Defendants. The Individual Defendants by their conduct evidence an enforceable assignment of the rights and obligations of the 2020 Binding LOI. The 2020 Binding LOI contemplates such an assignment and includes a provision enforcing the terms of the Binding LOI as to any successors and assigns. (Exhibit 1, § 7(c).)

8.  After the parties attempted to negotiate the terms of a definitive agreement with plaintiffs, the Individual Defendants refused to sign their proffered Definitive Agreement and thereupon breached the 2020 Binding LOI by refusing to provide their promised performance, including the purchase of the F&S stock and the Imperial County property.

9.  In or about 2015, Individual Defendants acquired 20% of the stock of F&S from plaintiffs. The Individual Defendants formed a special purpose corporation, Holdings in 2015 for the purpose of purchasing stock holdings in F&S, and had agreed to use Holdings again when they entered into the 2020 Binding LOI. Plaintiffs are informed and believe and based thereon allege that Holdings is undercapitalized; that it was not provided with and does not have

sufficient capital to consummate the 2020 Binding LOI transaction; that its corporate separateness from Individual Defendants has not been respected; and that it would be inequitable to shield the Individual Defendants from Holdings' liability by reason of Holdings' corporate shield. Holdings is now and has at all relevant times been the alter ego of the Individual Defendants.

10.     Individual Defendants held themselves out as the actual purchasers under the 2020 Binding LOI in their discussions with the plaintiffs. Their doing so was consistent with: their history of trying, as individuals, to purchase F&S in 2005; their purchase, as individuals, of 20% of F&S stock in 2015; their signing of the 2020 Binding LOI in their individual capacities; their demand that the purchaser in the Definitive Agreement specify them, as individuals rather than Holdings; and their express inclusion of themselves individually as the purchasers in their Definitive Agreement.

11.     Based on such conduct by and discussions with the Individual Defendants, Plaintiffs understood at all times that they were dealing directly with the Individual Defendants as the purchasers under the 2020 Binding LOI, and that the inclusion of Holdings in the 2020 Binding LOI was simply as a placeholder for the Individual Defendants. Plaintiffs similarly understood that the use of Holdings was simply a carryover from the 2015 stock purchase transaction. Plaintiffs were entirely willing for the Definitive Agreement to provide for the Individual Defendants to be the actual purchasers, and so agreed in discussions with the Individual Defendants.

12.     F&S is a closely held corporation, the stock of which has no readily available market.  F&S since 1949 has been a retailer of products in the travel and retail industries.  For example, it initially supplied duty-free products to marine vessels visiting the San Francisco port. It subsequently evolved into one of the larger wholesale and retail companies in the American duty-free and travel retail industry. Prior to filing for bankruptcy protection, it supplied duty-free retail

products to international travelers, including passengers and crew, through all the major cruise lines leaving U.S. ports, fishing vessels and commercial freighters leaving the ports of Seattle and Los Angeles, foreign embassies and consulates overseas, and also via their nine stores, to visitors and commuters driving to and from Mexico. Its business was dependent upon the travel and tourism industries and by reason of the COVID-19 pandemic its business has been substantially adversely affected.

13. Individual Defendants own and operate Duty-Free Americas, which is a major player in the tourist and travel retail market, as is F&S. Duty-Free Americas touts itself as a leading travel retailer in the Western Hemisphere offering an extensive selection of fragrances, cosmetics, wines, spirits, tobaccos, edibles, luxury leather goods, and other such goods in its 180 locations. It is a competitor of F&S. With the liquidation bankruptcy of F&S, the Individual Defendants now do not have competition from F&S regarding, among other things, their newly announced cruise line division; the Individual Defendants' duty-free stores on the border between the United States and Mexico with the closing of F&S's nine duty-free stores on the Southern Border; and F&S's previously successful health and beauty products division in which the Individual Defendants had expressed an interest and which is now available to the Individual Defendants through their hiring of one or more of F&S's partners and executives.

14. As a minority shareholder of F&S, Individual Defendants were well aware of the financial viability of F&S and of its corporate decisions and actions generally.

## II.

## FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT
## (SPECIFIC PERFORMANCE)

15. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference as if those paragraphs were set forth

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1  in full.

2      16.    The stock of F&S is unique and essentially has no readily

3  determinable market value by reason of F&S being a closely held corporation

4  without a public market.  There is no adequate remedy at law to compensate

5  plaintiffs for the breach by the Individual Defendants and Holdings of the 2020

6  Binding LOI for the purchase of plaintiff's Imperial County, California real

7  property and for the purchase of the 80% stock holding in F&S. Plaintiffs have

8  performed all obligations on their part to be performed under the 2020 Binding

9  LOI.

10      17.    The 2020 Binding LOI provides for a fair and equitable purchase

11  price and terms.

## III.

## SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT
## (DAMAGES)

15      18.    Plaintiffs reallege all prior paragraphs of this complaint and

16  incorporate the same herein by this reference as if those paragraphs were set forth

17  in full.

18      19.    In the event that specific performance is not available to enforce the

19  2020 Binding LOI, plaintiffs have suffered substantial damages as a direct and

20  proximate result of the Individual Defendants' and Holdings' breach of the 2020

21  Binding LOI.  Such damages are measured by the terms of the 2020 Binding LOI,

22  including defendants' agreement to assume various debts of F&S including its debt

23  to Wells Fargo Bank in excess of $20 million and to pay an additional $5 million

24  as provided by the 2020 Binding LOI.

## IV.

## THIRD CAUSE OF ACTION FOR FRAUD

27      20.    Plaintiffs reallege all prior paragraphs of this complaint and

28  incorporate the same herein by this reference as if those paragraphs were set forth

FIRST AMENDED COMPLAINT    Case No. 20-CV-00887-DMS-MSB

in full.

21. Defendant Leon Falic, on behalf of his brothers Simon and Jerome and with their full knowledge and agreement, undertook commencing in or about November, 2019 to cause plaintiffs to cease-and-desist from their attempt to market their 80% stock holding in F&S with full knowledge of the dire financial condition of F&S. Leon Falic, on behalf of Simon and Jerome and as their agent, time and again promised to consummate the purchase of plaintiffs' 80% stock holdings in F&S and the Imperial County property but insisted that plaintiffs cease marketing their F&S stock holdings. Plaintiffs recurrently insisted upon a binding contract before they would terminate their marketing efforts, and were first met with resistance by Leon Falic. Ultimately, in or about early March 2020 Leon Falic, on behalf of Simon and Jerome, agreed to enter into the 2020 Binding LOI thereby committing to closing the transaction on the terms set forth in the 2020 Binding LOI.

22. As a result, plaintiffs discontinued their marketing effort of F&S stock and focused on closing the transaction provided for by the 2020 Binding LOI. Defendants, however, having now succeeded in having such marketing terminated demanded plaintiffs agree to substantially revise the terms of the 2020 Binding LOI to defendants' substantial advantage and plaintiffs' substantial disadvantage; and soon thereafter determined to simply breach the 2020 Binding LOI and refuse to close the transaction.

23. Plaintiffs are informed and believe and allege thereon that the Individual Defendants when they entered into the 2020 Binding LOI had no intention of consummating the transaction. Rather their intention was to induce plaintiffs to agree to the terms of the Binding LOI and place F&S in an untenable financial situation where it now needs the 2020 Binding LOI transaction to close and has no viable option to re-market F&S stock to another purchaser. The Individual Defendants intended to then demand substantial changes to the 2020

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Binding LOI which they in fact demanded. The Individual Defendants then changed course and simply refused to close the transaction provided by the 2020 Binding LOI.

24. As was intended by the Individual Defendants, and in fact occurred, there was insufficient time for plaintiffs to re-undertake marketing efforts to salvage F&S; allowing defendants to simply wait until the devastating effects of the crashing of the travel and tourist industry brought about the devaluation of F&S. Such would enable defendants to acquire for de minimis consideration the remnants of F&S; and eliminate a competitor.

25. As a direct and proximate result of the foregoing, plaintiffs have been damaged in an amount to be established at trial.

26. The Individual Defendants, and each of them, have been guilty of oppression, fraud, and malice, and plaintiffs, in addition to their actual damages, are entitled to recover damages for the sake of example and by way of punishing defendants, and each of them.

WHEREFORE, plaintiffs pray that judgment be entered as follows:

A. Regarding the first cause of action, that specific performance be ordered that Holdings and the Individual Defendants perform each and every one of their obligations provided for by the 2020 Binding LOI.

B. Regarding the second cause of action, in the alternative to the first cause of action, that judgment be entered awarding plaintiffs damages by reason of the breach by Holdings and the Individual Defendants of the 2020 Binding LOI.

C. That the corporate shield of Holdings be set aside and Individual Defendants, and each of them, be held responsible and liable for the performance of the duties and obligations of Holdings.

D. That Individual Defendants, and each of them, be concluded to have committed fraud and be ordered to pay to plaintiffs damages according to proof.

E. That plaintiffs be awarded punitive damages against defendants and

FIRST AMENDED COMPLAINT          Case No. 20-CV-00887-DMS-MSB

each of them in an amount according to proof.

F. That plaintiffs be awarded their attorneys' fees and their costs of suit incurred herein.

G. That this Court order such additional relief to plaintiffs as it may determine to be just and proper.

Dated: August 17, 2020

GORDON REES SCULLY MANSUKHANI, LLP

By: _s/Charles Berwanger_
Charles V. Berwanger
Andrea K. Scripps
Attorneys for Plaintiffs,
NICOLE UHLIG AND MICHELLE STOLDT, AS TRUSTEES OF (1) THE SURVIVOR'S TRUST ESTABLISHED UNDER THE WOLFGANG AND ELKE UHLIG REVOCABLE LIVING TRUST U/A/D APRIL 16, 1998; (2) THE MARITAL GST NON-EXEMPT TRUST ESTABLISHED UNDER THE WOLFGANG AND ELKE UHLIG REVOCABLE LIVING TRUST U/A/D APRIL 16, 1998, AS AMENDED; (3) THE MARITAL GST EXEMPT TRUST ESTABLISHED UNDER THE WOLFGANG AND ELKE UHLIG REVOCABLE LIVING TRUST U/A/D APRIL 16, 1998, AS AMENDED; AND (4) THE BYPASS TRUST ESTABLISHED UNDER THE WOLFGANG AND ELKE UHLIG REVOCABLE LIVING TRUST U/A/D APRIL 16, 1998, AS AMENDED

**EXHIBIT 1**

Letter of Intent

Dear Leon:

I am pleased to set forth in this letter of intent ("LOI") our agreement and understanding of the essential terms and conditions for the acquisition (the "Acquisition") by Fairn & Swanson Holdings, Inc.,("Buyer") of 80% of the outstanding capital stock of Fairn & Swanson Inc., a California corporation ("F&S") (the "Shares") from the following trusts, of which we are trustees: the Survivor's Trust established under the Wolfgang and Elke Uhlig Revocable Living Trust u/a/d April 16, 1998 (the "Survivor's Trust"); the Marital GST Non-Exempt Trust established under the Wolfgang and Elke Uhlig Revocable Living Trust u/a/d April 16, 1998, as amended (the "Marital GST Non-Exempt Trust"); the Marital GST Exempt Trust established under the Wolfgang and Elke Uhlig Revocable Living Trust u/a/d April 16, 1998, as amended ("Marital GST Exempt Trust"); and the Bypass Trust established under the Wolfgang and Elke Uhlig Revocable Living Trust u/a/d April 16, 1998, as amended ("Bypass Trust"). The Survivor's Trust, the Marital GST Exempt Trust, the Marital GST Non-Exempt Trust and the ByPass Trust are collectively referred to herein as the "Sellers"). The parties intend this LOI agreement to be binding and enforceable only to the extent specifically set forth herein. As provided herein the purchase by Buyer of the real property commonly known as 237 and 241 S. Imperial Road, Calexico, California (the "Calexico Property") shall be part of this transaction.

Our agreement is as follows:

1.  Purchase.

    (a)    Purchase Price and Consideration.

        (i)    Buyer will acquire from Sellers the Shares and the Calexico Property, free and clear of all liens and encumbrances, for a net cumulative purchase price of $5,000,000 payable to Sellers in full at closing. Payments shall be allocated between (a) purchase of the Shares, (b) repayment of the full of unsecured loans from Sellers to F & S and (c) payment on the close of the Calexico Property of a net amount of $800,000.

        (ii)    Sellers will be responsible for all income, transfer and other taxes associated with the sale of the Shares. Buyer shall be responsible for all documentary transfer taxes, title insurance, escrow fees and recording fees associated with the sale of the Calexico Property.

        (iii)    On closing of the purchase of the Shares Buyer shall cause F&S to pay in full or assume if agreeable to Wells Fargo Bank NA: (A) all indebtedness of F&S from Wells Fargo Bank NA, (B) any other indebtedness of F & S which is guaranteed by one or more of Sellers, and (C) all subordinated debt of F&S (including all loans from Sellers) in the amount of $2,400,000 on payment terms agreeable to Sellers in accordance with subparagraph (a)(i) above, it being understood that the total payment due Sellers for the purchase of shares, the purchase of the Calexico Property and payment of subordinated debt shall not exceed $5,000,000.

(b)    Deposit. Not later than two business days after the execution of this LOI by Buyer, Buyer shall deposit with an escrow or other entity acceptable to Sellers the amount of $1,000,000 as a non-refundable deposit.

(c)    Closing. The execution of the Definitive Agreements (as defined in paragraph 4) will occur on or before March 17, 2020 and close of the purchase of the Shares contemplated herein will occur on or before March 24, 2020.

2.    Additional Material Terms and Conditions.

(a)    The following are material conditions precedent to Buyer's obligations to consummate the purchase of the Shares:

(i)    Buyer has had a reasonable opportunity to complete, and has completed to its satisfaction, its due diligence and there shall be no due diligence condition.

(ii)    As of the closing, F&S will have no indebtedness or other liabilities, other than (1) indebtedness and liabilities existing on March17, 2020, including loans made by Buyer, (and accrued interest on such loans) and (2) trade payables, accrued expenses and other current liabilities incurred in the ordinary and normal course of business consistent with past practices.

(iii)    The absence, as of the closing date of the Acquisition, of any injunction, order or other decree by any court or governmental body or any pending or threatened litigation or proceeding prohibiting, restraining or otherwise preventing or adversely affecting the consummation of such Acquisition.

(b)    F&S shall be in 'as is" condition on date of close and Sellers shall make no representations as to the condition of F&S except as set forth in this LOI. The condition of the Calexico Property shall be AS IS with no representations or warranties from Seller.

3.    Definitive Agreements. Buyer and Sellers will make a good faith effort to negotiate and enter into definitive agreements for the Acquisition prior to March 17, 2020 ("Definitive Agreements"). The Definitive Agreements will be in mutually agreed form and, in addition to matters addressed in this letter, will contain representations and warranties limited to and substantially the same as those in Article IV and Article V of the Agreement of Purchase and Sale and Escrow Instructions dated as of August 4, 2015 subject to the limitations contained in this LOI, specifically and without limitation that the condition of F&S be "as is". Sellers will not be required to provide warranties beyond such representations and warranties or any indemnities.

4.    Ordinary Course of Business. Until the closing, F&S will conduct its business only in the normal and ordinary course and consistent with good business practices and use its best efforts to preserve its business operations intact and to preserve its existing business relationships. Except in the ordinary course of the business, without limiting the foregoing, F&S will not without the notice to Buyer (i) create, incur or assume any indebtedness for borrowed money, except in the ordinary and normal course of business consistent with past practices, (ii) except in the ordinary course of business, sell, encumber or otherwise dispose of any of its assets, except sales of inventory in the ordinary and normal course of business consistent with past practice, (iii) enter into or amend, terminate, cancel or waive the provisions of any material contract or agreement, (iv) pay any

dividends or make any distributions or loans to the Sellers or their affiliates, or redeem or issue any capital stock or securities convertible or exercisable into their capital stock, (v) enter into any transactions with Sellers or their affiliates or increase any compensation or benefit arrangement for or make loans to any employee or consultant (except for health care), or (vi) engage in any other transaction which has or could reasonably be expected to have a material adverse effect on its businesses, operations, assets, financial condition or prospects.

     5.    <u>Nonsolicitation</u>. As consideration for the expenditures of time, effort, and money Buyer will incur in connection with the Acquisition, Sellers, for themselves and for F&S and their respective officers, directors, employees and agents, agree, until the earlier of March 17, 2020 or the date the Definitive Agreements are executed and all conditions set forth in paragraph 2 of this LOI have been satisfied or waived, not to, directly or indirectly, (i) negotiate or have substantive discussions with, or enter into any agreement or understanding with, any other person or entity for the sale, transfer or disposition of the assets or the capital stock of F&S (an "Acquisition Proposal"), (ii) take any action to solicit, initiate or encourage an Acquisition Proposal, or (iii) continue, initiate or engage in negotiations with, disclose any non-public information relating to F&S or afford access to the properties, books or records of F&S to any person or entity (except Buyer) that may be considering or has made an Acquisition Proposal.

     6.    <u>Access to Information</u>. Sellers shall continue to cause F&S to (i) afford Buyer's representatives full access during normal business hours to its offices, properties, books and records, including copies of all financial and tax records, contracts and agreements and other relevant documents, (ii) furnish Buyer and its representatives with such financial, operating and other data and information related to F&S (including the TTB Matters) and (iii) make the management, accountants and attorneys of F&S available to discuss the foregoing solely for the purpose of Buyer's intended acquisition of the Shares.

     7.    <u>Miscellaneous</u>.

     (a)    This proposal letter will remain in effect until 5:00 PM (PST), March 3, 2020, unless accepted or rejected by Seller, or withdrawn by Buyer prior to that time.

     (b)    Except as required by law, neither Buyer, Sellers, nor their affiliates or representatives will disclose publicly—i.e., to any person (including third-parties, affiliates, or their respective employees) who does not have a need to know for purposes reasonably related to the Acquisitions—the existence of this LOI or the subject matter hereof without the prior written approval of the other party hereto. If any party is required to make such a disclosure by law, it will notify the other party in advance.

     (c)    This LOI is an expression of mutual intent to proceed with the sale and drafting of the Definitive Agreements and collateral documents contemplated thereby in accordance with the principles stated herein and is intended to be a binding contract. This agreement is not contingent on the preparation of the Definitive Agreements. To the extent this LOI is binding and enforceable, it will bind and inure to the benefit of the parties and their respective successors and assigns.

     (d)    Buyer agrees not to use any information concerning F&S obtained pursuant to paragraph 6 of this LOI for any purpose except for the purpose stated in paragraph 6 (the "Permitted Purpose"). Buyer further agrees not to disclose any information received under paragraph 6 or this

LOI, except to those who are required to have the information in order to evaluate or engage in discussions concerning the Permitted Purpose. Buyer further agrees not to convey any such information without the express written permission of Sellers. Should the Acquisitions not be consummated, Buyer and its affiliates will keep all information obtained about F&S during Buyer's due diligence investigation or negotiations strictly confidential, shall not use any such information for any purpose, and shall return or destroy upon Sellers' request all documents in their possession relating to F&S.

(e)     This LOI shall be governed by and construed in accordance with internal laws of the state of California, without giving effect to any choice or conflict of law provision or rule (whether of the state of California or any other jurisdiction) that would cause the application of laws of any jurisdiction other than those of the state of California.

(f)     Except as specifically set forth or referred to herein, nothing herein is intended or shall be construed to confer upon any person or entity other than the parties and their successors or assigns, any rights or remedies under or by reason of this LOI.

(g)     Buyer and Sellers will be responsible for their own expenses with respect to this LOI and the Acquisition, including legal, accounting, consulting, financial advisory, investment banking, broker's or finder's fees and expenses. This LOI may be executed in counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one agreement. The headings of the various sections of this LOI have been inserted for reference only and shall not be deemed to be a part of this LOI.

If the foregoing is acceptable, please sign and return a copy of this LOI to my attention.

Sincerely,

SELLERS

**Survivor's Trust**

By: _____
     Nicole Uhlig, Trustee

**Marital GST Non-Exempt Trust**

By: _____
     Nicole Uhlig, Trustee

**Marital GST Exempt Trust**

By: _____
     Nicole Uhlig, Trustee

**Bypass Trust:**

By: _____
     Nicole Uhlig, Trustee

**AGREED AND ACCEPTED:**

BUYER

Fairn & Swanson Holdings, Inc.

By: _____
Leon Falic, _____

By:_____
Simon Falic, _____

By: _____
Jerome Falic _____

1006583/50009032v.1

By: _____
Leon Falic, _____

By: _____
Simon Falic, _____

By: _____
Jerome Falic _____

By: _____
Leon Falic, _____

By: [signature]
Jerome Falic _____

By: _____
Simon Falic, _____

By: _____
Leon Falic, _____

By: _____
Jerome Falic _____

By: _____
Simon Falic, _____

100230300902v.1

**EXHIBIT 2**

1  CHARLES V. BERWANGER  (SBN:  047282)
   cberwanger@grsm.com
2  ANDREA K. SCRIPPS  (SBN:  235375)
   ascripps@grsm.com
3  GORDON REES SCULLY MANSUKHANI, LLP
   101 W. Broadway, Suite 2000
4  San Diego, CA 92101
   Telephone:  (619) 230-7784
5  Facsimile:  (619) 696-7124

6  Attorneys for Plaintiffs
   NICOLE UHLIG AND MICHELLE STOLDT, AS TRUSTEES OF (1) THE
7  SURVIVOR'S TRUST ESTABLISHED UNDER THE WOLFGANG AND
   ELKE UHLIG REVOCABLE LIVING TRUST U/A/D APRIL 16, 1998; (2)
8  THE MARITAL GST NON-EXEMPT TRUST ESTABLISHED UNDER THE
   WOLFGANG AND ELKE UHLIG REVOCABLE LIVING TRUST U/A/D
9  APRIL 16, 1998, AS AMENDED; (3) THE MARITAL GST EXEMPT TRUST
   ESTABLISHED UNDER THE WOLFGANG AND ELKE UHLIG
10 REVOCABLE LIVING TRUST U/A/D APRIL 16, 1998, AS AMENDED; AND
   (4) THE BYPASS TRUST ESTABLISHED UNDER THE WOLFGANG AND
11 ELKE UHLIG REVOCABLE LIVING TRUST U/A/D APRIL 16, 1998, AS
   AMENDED

12            UNITED STATES DISTRICT COURT

13            SOUTHERN DISTRICT OF CALIFORNIA

14

15 NICOLE UHLIG AND MICHELLE            )  CASE NO.  20-CV-00887-
   STOLDT, AS TRUSTEES OF (1) THE       )  DMS-MSB
16 SURVIVOR'S TRUST ESTABLISHED         )
   UNDER THE WOLFGANG AND ELKE          )  FIRST AMENDED
17 UHLIG REVOCABLE LIVING TRUST         )  COMPLAINT FOR
   U/A/D APRIL 16, 1998; (2) THE MARITAL )  (1) BREACH OF CONTRACT
18 GST NON-EXEMPT TRUST                 )  (SPECIFIC
   ESTABLISHED UNDER THE                )  PERFORMANCE);
19 WOLFGANG AND ELKE UHLIG              )  (2) BREACH OF CONTRACT
   REVOCABLE LIVING TRUST U/A/D         )  (IN THE ALTERNATIVE,
20 APRIL 16, 1998, AS AMENDED; (3) THE  )  DAMAGES); AND
   MARITAL GST EXEMPT TRUST             )  (3) FRAUD
21 ESTABLISHED UNDER THE                )
   WOLFGANG AND ELKE UHLIG             )
22 REVOCABLE LIVING TRUST U/A/D         )  JURY TRIAL IS DEMANDED
   APRIL 16, 1998, AS AMENDED; AND (4)  )
23 THE BYPASS TRUST ESTABLISHED         )
   UNDER THE WOLFGANG AND ELKE          )
24 UHLIG REVOCABLE LIVING TRUST         )
   U/A/D APRIL 16, 1998, AS AMENDED,    )
25                                       )
                 Plaintiffs,            )
26                                       )
   vs.                                  )
27                                       )
   FAIRN & SWANSON HOLDINGS, INC. a     )
28 Delaware Corporation; LEON FALIC, an

-1-

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1  individual; SIMON FALIC, an individual;        )
2  JEROME FALIC, an individual; and DOES 1        )
   through 20, inclusive,                          )
                                                   )
3                    Defendants.                    )
   _____)

4

5       Plaintiffs, NICOLE UHLIG AND MICHELLE STOLDT, AS TRUSTEES

6  OF (1) THE SURVIVOR'S TRUST ESTABLISHED UNDER THE WOLFGANG

7  AND ELKE UHLIG REVOCABLE LIVING TRUST U/A/D APRIL 16, 1998; (2)

8  THE MARITAL GST NON-EXEMPT TRUST ESTABLISHED UNDER THE

9  WOLFGANG AND ELKE UHLIG REVOCABLE LIVING TRUST U/A/D

10 APRIL 16, 1998, AS AMENDED; (3) THE MARITAL GST EXEMPT TRUST

11 ESTABLISHED UNDER THE WOLFGANG AND ELKE UHLIG REVOCABLE

12 LIVING TRUST U/A/D APRIL 16, 1998, AS AMENDED; AND (4) THE

13 BYPASS TRUST ESTABLISHED UNDER THE WOLFGANG AND ELKE

14 UHLIG REVOCABLE LIVING TRUST U/A/D APRIL 16, 1998, AS

15 AMENDED, by and through their attorneys of record allege and pray as follows:

16                                  **I.**

17      **GENERAL ALLEGATIONS, JURISDICTION, PARTIES, AND VENUE**

18      1.    Jurisdiction herein is based upon the diversity of the parties as

19 provided by 28 USC section 1332.  The domiciles of the parties are as follows:

20          a.    Plaintiffs, NICOLE UHLIG AND MICHELLE STOLDT, AS

21      TRUSTEES OF (1) THE SURVIVOR'S TRUST ESTABLISHED UNDER

22      THE WOLFGANG AND ELKE UHLIG REVOCABLE LIVING TRUST

23      U/A/D APRIL 16, 1998; (2) THE MARITAL GST NON-EXEMPT TRUST

24      ESTABLISHED UNDER THE WOLFGANG AND ELKE UHLIG

25      REVOCABLE LIVING TRUST U/A/D APRIL 16, 1998, AS AMENDED;

26      (3) THE MARITAL GST EXEMPT TRUST ESTABLISHED UNDER THE

27      WOLFGANG AND ELKE UHLIG REVOCABLE LIVING TRUST U/A/D

28      APRIL 16, 1998, AS AMENDED; AND (4) THE BYPASS TRUST

-2-

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT                    Case No. 20-CV-00887-DMS-MSB

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1     ESTABLISHED UNDER THE WOLFGANG AND ELKE UHLIG

2     REVOCABLE LIVING TRUST U/A/D APRIL 16, 1998, AS AMENDED,

3     bring this proceeding in their capacities as trustees of the identified trusts

4     here from the caption. The trustees are domiciled in California.

5          b.    Defendant Fairn & Swanson Holdings, Inc. ("Holdings") is a

6     Delaware corporation whose headquarters, plaintiffs are informed and

7     believe, are located in Florida.

8          c.    Defendant Simon Falic is an individual domiciled in Panama.

9          d.    Defendant Leon Falic is an individual domiciled in Florida.

10          e.    Defendant Jerome Falic is an individual domiciled in Florida.

11     (Herein, the three individual defendants are referred to jointly as the

12     "Individual Defendants.")

13     2.    Plaintiffs are ignorant of the true names and capacities of DOES 1

14     through 20, inclusive, and/or are ignorant of the facts giving rise to their liability

15     and will amend this complaint once their identities have been ascertained as well as

16     the facts giving rise to their liability. These defendants were agents, servants and

17     employees of each of the other named defendants and were acting at all times

18     within the full course and scope of their agency and employment, with the full

19     knowledge and consent, either expressed or implied, of their principal and/or

20     employer and each of the other named defendants. Each of the defendants had

21     approved or ratified the actions of the other defendants, thereby making the

22     currently named defendants liable for the acts and/or omissions of their agents,

23     servants and/or employees.

24     3.    The amount in controversy is substantially in excess of $15,000,000

25     exclusive of interest and costs, as alleged herein.

26     4.    This action arises out of the breach by ~~defendant~~defendants Holdings.

27     and the Individual Defendants of the binding letter of intent entered into by ~~it~~them

28     with plaintiffs on or about March 4, 2020.  (Herein, "2020 Binding LOI," a true

FIRST AMENDED COMPLAINT ~~FOR BREACH OF CONTRACT~~        Case No. 20-CV-00887-DMS-MSB

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1   and correct copy of which is attached hereto and marked "Exhibit 1.")  By the

2   2020 Binding LOI plaintiffs agree to convey to Holdings or its "successors and

3   assigns" 80% of the stock in closely held Fairn & Swanson, Inc. ("F&S") a

4   California Corporation, and all right, title, and interest in plaintiffs' retail real

5   property located in Imperial County, California.  (Individual defendants Defendants

6   own the remaining 20% of F&S's stock either directly or through a controlled

7   entity.)  In return, Holdings agrees to assume specified debts of F&S; to purchase

8   the Imperial County property; and to pay plaintiffs $5 million.  By the binding 2020

9   Binding LOI the transaction was to close on or before the end of March, 2020. The

10  Binding LOI is to be performed in California.

11       5.      Venue is proper in the Southern District of California because the real

12  property is located in Imperial County, California and such real property is a

13  substantial component of this litigation.  Among the relief sought here is the

14  specific performance of the 2020 Binding LOI requiring defendants to

15  consummate the purchase of the Imperial County, California property.

16       6.      At all times during the negotiations with defendants culminating in

17  execution of the 2020 Binding LOI, and as was well-known by defendants, and

18  each of them, F&S was in substantial financial distress and plaintiffs' 80% stock

19  holding interest was in the process of being marketed to third parties. The

20  Individual Defendants by for themselves and through Holdings agreed to signed the

21  2020 Binding LOI conditioned on all marketing efforts ceasing. Upon the

22  execution of the binding 2020 Binding LOI plaintiffs terminated their marketing

23  efforts understanding that the binding 2020 Binding LOI transaction would close in

24  the immediate future.

25       7.      Defendants having obtained F&S's cessation of marketing efforts and

26  being fully aware of F&S's financial distress thereupon at first insisted that the

27  purchase price provided by the 2020 Binding LOI be substantially reduced; and

28  immediately thereafter determined refused to simply breach the consummate the

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT          Case No. 20-CV-00887-DMS-MSB

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

transaction. The 2020 Binding LOI provides that the parties will make good faith efforts to negotiate one or more "Definitive Agreements" further detailing the terms of the sale of stock and the terms of the sale of the Imperial County property, but expressly provides that it, the 2020 Binding LOI, "is not contingent on the preparation of the Definitive Agreements." The Definitive Agreement for the purchase by Defendants of F&S stock *prepared and proposed by Defendants* ("Definitive Agreement") names the Individual Defendants as the buyers of F&S stock in lieu of Holdings. The change in the named buyers of the F&S stock from Holdings to the Individual Defendants conclusively evidences an assignment by Holdings and the Individual Defendants of the rights and obligations imposed on the buyer under the 2020 Binding LOI to the Individual Defendants. The Individual Defendants by their conduct evidence an enforceable assignment of the rights and obligations of the 2020 Binding LOI. The 2020 Binding LOI contemplates such an assignment and includes a provision enforcing the terms of the Binding LOI as to any successors and assigns. (Exhibit 1, § 7(c).)

7. 8.    After the parties attempted to negotiate the terms of a definitive agreement with plaintiffs, the Individual Defendants refused to sign their proffered Definitive Agreement and thereupon breached the 2020 Binding LOI by refusing to provide their promised performance, including the purchase of the F&S stock and the Imperial County property.

8. 9.    In or about 2015, Individual Defendants Simon Falic, Leon Falic, and Jerome Falic (referred to herein jointly as "acquired 20% of the stock of F&S from plaintiffs. The Individual Defendants") formed a special purpose corporation, Holdings, in 2015 for the purpose of purchasing stock holdings in F&S, including enteringand had agreed to use Holdings again when they entered into the Binding LOI and any follow up agreements giving effect to the 2020 Binding LOI. Plaintiffs are informed and believe and based thereon allege that Holdings is undercapitalized; that it was not provided with and does not have sufficient capital

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT                    Case No. 20-CV-00887-DMS-MSB

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1  to consummate the 2020 Binding LOI transaction; that its corporate separateness

2  from Individual Defendants has not been respected; and that it would be

3  inequitable to shield the Individual Defendants' Defendants from Holdings'

4  liability by reason of Holdings' corporate shield. Holdings is now and has at all

5  relevant times been the alter ego of the Individual Defendants and order of them.

6      10.    Individual Defendants held themselves out as the actual purchasers

7  under the 2020 Binding LOI in their discussions with the plaintiffs. Their doing so

8  was consistent with: their history of trying, as individuals, to purchase F&S in

9  2005; their purchase, as individuals, of 20% of F&S stock in 2015; their signing of

10  the 2020 Binding LOI in their individual capacities; their demand that the

11  purchaser in the Definitive Agreement specify them, as individuals, rather than

12  Holdings; and their express inclusion of themselves individually as the purchasers

13  in their Definitive Agreement.

14      11.    Based on such conduct by and discussions with the Individufal

15  Defendants, Plaintiffs understood at all times that they were dealing directly with

16  the Individual Defendants as the purchasers under the 2020 Binding LOI, and that

17  the inclusion of Holdings in the 2020 Binding LOI was simply as a placeholder for

18  the Individual Defendants. Plaintiffs similarly understood that the use of Holdings

19  was simply a carryover from the 2015 stock purchase transaction. Plaintiffs were

20  entirely willing for the Definitive Agreement to provide for the Individual

21  Defendants to be the actual purchasers, and so agreed in discussions with the

22  Individual Defendants.

23      9. 12.  F&S is a closely held corporation, the stock of which has no readily

24  available market.  F&S since 1949 has been a retailer of products in the travel and

25  retail industries.  For example, it initially supplied duty-free products to marine

26  vessels visiting the San Francisco port and has since. It subsequently evolved into

27  one of the larger wholesale and retail companies in the American duty-free and

28  travel retail industry.  It suppliesPrior to filing for bankruptcy protection, it

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT        Case No. 20-CV-00887-DMS-MSB

supplied duty-free retail products to international travelers, including passengers and crew, ~~from~~through all the major cruise lines leaving U.S. ports, fishing vessels ~~leaving the Port of Seattle for the Bering Sea, and~~ commercial freighters ~~travelling to and from Shanghai~~ leaving the ports of Seattle and ~~the Port of~~ Los Angeles, ~~cruise ships traveling through the Caribbean islands, as well as~~ foreign embassies and consulates overseas, and also via their nine stores, to visitors and commuters driving to and from Mexico ~~and Canada.~~ . Its business ~~is~~was dependent upon the travel and ~~tourist~~tourism industries and by reason of the COVID-19 pandemic its business has been substantially adversely affected.

~~10.~~13. Individual Defendants own and operate Duty-Free Americas, which is a major player in the tourist and travel retail market, as is F&S. Duty-Free Americas touts itself as a leading travel retailer in the Western Hemisphere offering an extensive selection of fragrances, cosmetics, wines, spirits, tobaccos, edibles, luxury leather goods, and other such goods in its 180 locations. It is a competitor of F&S. With the liquidation bankruptcy of F&S, the Individual Defendants now do not have competition from F&S regarding, among other things, their newly announced cruise line division; the Individual Defendants' duty-free stores on the border between the United States and Mexico with the closing of F&S's nine duty-free stores on the Southern Border; and F&S's previously successful health and beauty products division in which the Individual Defendants had expressed an interest and which is now available to the Individual Defendants through their hiring of one or more of F&S's partners and executives.

~~11.~~14. ~~In or about 2015, Individual Defendants acquired 20% of the stock of F&S from plaintiffs.~~ As a minority shareholder of F&S, Individual Defendants were well aware of the financial viability of F&S and of its corporate decisions and actions generally.

## II.

## FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT

FIRST AMENDED COMPLAINT ~~FOR BREACH OF CONTRACT~~                    Case No. 20-CV-00887-DMS-MSB

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**(SPECIFIC PERFORMANCE)**

~~12.~~15. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference as if those paragraphs were set forth in full.

~~13.~~16. The stock of F&S is unique and essentially has no readily determinable market value by reason of F&S being a closely held corporation without a public market. There is no adequate remedy at law to compensate plaintiffs for the breach by the Individual Defendants and Holdings of the 2020 Binding LOI for the purchase of plaintiff's Imperial County, California real property and for the purchase of the 80% stock holding in F&S. Plaintiffs have performed all obligations on their part to be performed under the 2020 Binding LOI.

~~14.~~17. The 2020 Binding LOI provides for a fair and equitable purchase price and terms.

**III.**

**SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT**

**(DAMAGES)**

~~15.~~18. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference as if those paragraphs were set forth in full.

~~16.~~19. In the event that specific performance is not available to enforce the 2020 Binding LOI, plaintiffs have suffered substantial damages as a direct and proximate result of the Individual Defendants' and Holdings' breach of the 2020 Binding LOI. Such damages are measured by the terms of the 2020 Binding LOI, including ~~Holdings'~~ defendants' agreement to assume various debts of F&S including its debt to Wells Fargo Bank in excess of $~~10~~20 million and to pay an additional $5 million as provided by the 2020 Binding LOI.

**IV.**

FIRST AMENDED COMPLAINT ~~FOR BREACH OF CONTRACT~~                    Case No. 20-CV-00887-DMS-MSB

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

**THIRD CAUSE OF ACTION FOR FRAUD**

17.20. Plaintiffs reallege all prior paragraphs of this complaint and incorporate the same herein by this reference as if those paragraphs were set forth in full.

18.21. Defendant Leon Falic, on behalf of his brothers Simon and Jerome and with their full knowledge and agreement, undertook commencing in or about November, 2019 to cause plaintiffs to cease-and-desist from their attempt to market their 80% stock holding in F&S with full knowledge of the dire financial condition of F&S. Leon Falic, on behalf of Simon and Jerome and as their agent, time and again promised to consummate the purchase of plaintiffs' 80% stock holdings in F&S and the Imperial County property but insisted that plaintiffs cease marketing their F&S stock holdings. Plaintiffs recurrently insisted upon a binding contract before they would terminate their marketing efforts, and were first met with resistance by Leon Falic. Ultimately, in or about early March 2020 Leon Falic, on behalf of Simon and Jerome, agreed to enter into the 2020 Binding LOI thereby committing to closing the transaction on the terms set forth in the 2020 Binding LOI.

19.22. As a result, plaintiffs discontinued their marketing effort of F&S stock and focused on closing the transaction provided for by the 2020 Binding LOI. Defendants, however, having now succeeded in having such marketing terminated demanded plaintiffs agree to substantially revise the terms of the 2020 Binding LOI to defendants' substantial advantage and plaintiffs' substantial disadvantage; and soon thereafter determined to simply breach the 2020 Binding LOI and refuse to close the transaction.

20.23. Plaintiffs are informed and believe and allege thereon that defendants the Individual Defendants when they entered into the 2020 Binding LOI had no intention of consummating the transaction. Rather their intention was to induce plaintiffs to agree to the terms of the Binding LOI and place F&S in an untenable

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT                    Case No. 20-CV-00887-DMS-MSB

Formatted: Indent: Left: 0", First line: 0.44", Outline numbered + Level: 2 + Numbering Style: 1, 2, 3, ... + Start at: 1 + Alignment: Left + Aligned at: 0.5" + Indent at: 1"

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

financial situation where it now needs the 2020 Binding LOI transaction to close and has no viable option to re-market F&S stock to another purchaser.  The Individual Defendants intended to then demand substantial changes to the 2020 Binding LOI which they in fact demanded.  The Individual Defendants then changed course toand simply refuserefused to close the transaction provided by the 2020 Binding LOI.

21.24. As was intended by defendantsthe Individual Defendants, and in fact occurred, there was insufficient time for F&Splaintiffs to re-undertake marketing efforts to salvage F&S; allowing defendants to simply wait until the devastating effects of the crashing of the travel and tourist industry brought about the devaluation of F&S.  Such would enable defendants to acquire for de minimis consideration the remnants of F&S; and eliminate a competitor.

22.25. As a direct and proximate result of the foregoing, plaintiffs have been damaged in an amount to be established at trial.

23.26. The Individual Defendants, and each of them, have been guilty of oppression, fraud, and malice, and plaintiffs, in addition to their actual damages, are entitled to recover damages for the sake of example and by way of punishing defendants, and each of them.

WHEREFORE, plaintiffs pray that judgment be entered as follows:

A.    The corporate shield of Holdings be set aside and individual defendants, and each of them, be held responsible and liable for the performance of the duties and obligations of Holdings.

B.A.   Regarding the first cause of action, that specific performance be ordered that Holdings and the Individual Defendants perform each and every one of itstheir obligations provided for by the 2020 Binding LOI.

C.B.   Regarding the second cause of action, in the alternative to the first cause of action, that judgment be entered awarding plaintiffs damages by reason of

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT          Case No. 20-CV-00887-DMS-MSB

the breach by Holdings and the Individual Defendants of the 2020 Binding LOI.

C.     That the corporate shield of Holdings be set aside and Individual Defendants, and each of them, be held responsible and liable for the performance of the duties and obligations of Holdings.

D.     That Individual Defendants, and each of them, be concluded to have committed fraud and be ordered to pay to plaintiffs damages according to proof.

E.     That plaintiffplaintiffs be awarded punitive damages against defendants and each of them in an amount according to proof.

F.     That plaintiffs be awarded their attorneys' fees and their costs of suit incurred herein.

G.     That this Court order such additional relief to plaintiffs as it may determine to be just and proper.


Dated:  May 8, 2020            GORDON REES SCULLY
                               MANSUKHANI, LLP


                               By:  s/Charles Berwanger
                               Charles V. Berwanger
                               Andrea K. Scripps
                               Attorneys for Plaintiffs,
                               NICOLE UHLIG AND MICHELLE
                               STOLDT, AS TRUSTEES OF (1) THE
                               SURVIVOR'S TRUST ESTABLISHED
                               UNDER THE WOLFGANG AND ELKE
                               UHLIG REVOCABLE LIVING TRUST
                               U/A/D APRIL 16, 1998; (2) THE
                               MARITAL GST NON-EXEMPT TRUST
                               ESTABLISHED UNDER THE
                               WOLFGANG AND ELKE UHLIG
                               REVOCABLE LIVING TRUST U/A/D
                               APRIL 16, 1998, AS AMENDED; (3) THE
                               MARITAL GST EXEMPT TRUST
                               ESTABLISHED UNDER THE
                               WOLFGANG AND ELKE UHLIG

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT                    Case No. 20-CV-00887-DMS-MSB

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

Gordon Rees Scully Mansukhani, LLP
101 W. Broadway, Suite 2000
San Diego, CA 92101

1  REVOCABLE LIVING TRUST U/A/D
2  APRIL 16, 1998, AS AMENDED; AND (4)
3  THE BYPASS TRUST ESTABLISHED
   UNDER THE WOLFGANG AND ELKE
4  UHLIG REVOCABLE LIVING TRUST
   U/A/D APRIL 16, 1998, AS AMENDED
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT          Case No. 20-CV-00887-DMS-MSB