UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE UHLIG and MICHELLE STOLDT, as Trustees of (1) the Survivor's Trust Established Under the Wolfgang and Elke Uhlig Revocable Living Trust U/A/D April 16, 1998; (2) the Marital GST Non-Exempt Trust Established Under the Wolfgang and Elke Uhlig Revocable Living Trust U/A/D April 16, 1998, as Amended; (3) the Marital GST Exempt Trust Established Under the Wolfgang and Elke Uhlig Revocable Living Trust U/A/D April 16, 1998, as Amended; and (4) the Bypass Trust Established Under the Wolfgang and Elke Uhlig Revocable Living Trust U/A/D April 16, 1998, as Amended,<br><br>                              Plaintiffs,<br><br>v.<br><br>FAIRN & SWANSON HOLDINGS, INC., a Delaware corporation; LEON FALIC, an individual; SIMON FALIC, an individual; JEROME FALIC, an individual;<br><br>                              Defendants. | Case No.:  20-cv-00887-DMS-MSB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

This case comes before the Court on Defendants Fairn & Swanson Holdings, Inc., Leon Falic, Simon Falic, and Jerome Falic's motion to dismiss. Defendants argue the Court lacks personal jurisdiction over the individual defendants ("the Falics") and Count III fails to state a claim. Plaintiffs filed an opposition to the motion, and Defendants filed a reply. For the reasons discussed below, the motion is granted.

# I.

# BACKGROUND

This case arises out of a Letter of Intent ("the LOI") entered into between Plaintiffs[1] and Defendant Fairn & Swanson Holdings, Inc. ("Holdings") in March 2020. (First Am. Compl. ("FAC") ¶ 4; Ex. 1 to FAC.) The LOI involves the sale of stock of Fairn & Swanson, Inc. ("F&S"), a closely held California corporation which, prior to filing for bankruptcy, supplied duty-free retail products to international travelers. (FAC ¶¶ 4, 12.)

In 2015, the Falics formed Holdings for the purpose of purchasing stock holdings in F&S. (*Id.* ¶ 9.) That same year, the Falics, as individual purchasers, acquired 20% of the stock of F&S from Plaintiffs pursuant to an agreement which also gave Holdings an option to purchase the remaining 80% of stock. (*Id.* ¶¶ 9, 10; Decl. of Nicole Uhlig ¶¶ 6, 8.) Subsequently, the parties began negotiating for the purchase of the remaining 80% of F&S stock. (*See* Decl. of Nicole Uhlig ¶ 8.) This culminated in the March 2020 LOI between Plaintiffs and Holdings, signed by Plaintiffs and the Falics. (Ex. 1 to FAC.)

Per the 2020 LOI's terms, Plaintiffs agreed to convey to Holdings 80% of the stock in F&S, as well as all right, title, and interest in Plaintiffs' retail real property located in

---

[1] The Court refers to Plaintiffs Nicole Uhlig and Michelle Stoldt, as Trustees of (1) the Survivor's Trust Established Under the Wolfgang and Elke Uhlig Revocable Living Trust U/A/D April 16, 1998; (2) the Marital GST Non-Exempt Trust Established Under the Wolfgang and Elke Uhlig Revocable Living Trust U/A/D April 16, 1998, as Amended; (3) the Marital GST Exempt Trust Established Under the Wolfgang and Elke Uhlig Revocable Living Trust U/A/D April 16, 1998, as Amended; and (4) the Bypass Trust Established Under the Wolfgang and Elke Uhlig Revocable Living Trust U/A/D April 16, 1998, as Amended, as "Plaintiffs" throughout this Order.

Imperial County, California. (*Id.* ¶ 4.) In return, Holdings agreed to assume specified debts of F&S, to purchase the Imperial County property, and to pay Plaintiffs $5 million. (*Id.*) The LOI provides that the parties will make good faith efforts to negotiate one or more "Definitive Agreements" further detailing the terms of sale of stock and terms of the sale of the real property, but that the LOI "is not contingent on the preparation of the Definitive Agreements." (FAC ¶ 7; *see* Ex. 1 to FAC.) After the LOI's execution, the parties began to finalize such an agreement, and Leon Falic sent Plaintiffs a draft agreement for review on March 15, 2020, but this draft agreement was never signed by the parties. (FAC ¶ 8; Decl. of Nicole Uhlig ¶ 14; Ex. 7 to Decl. of Nicole Uhlig.) Instead, Defendants declined to consummate the transactions provided for in the LOI. (FAC ¶ 7.) Specifically, Defendants refused to sign the draft Definitive Agreement and refused to provide the promised performance of purchasing the F&S stock and the Imperial County property. (*Id.* ¶ 8.)

Based on these allegations, Plaintiffs filed this diversity action against Holdings and the Falics on May 12, 2020.[2] On August 17, 2020, Plaintiffs filed a FAC, claiming breach of contract and fraud. Plaintiffs seek specific performance, damages, and attorneys' fees.

## II.

## DISCUSSION

The Court first considers Defendants' evidentiary objections to the Declaration of Nicole Uhlig. The Court then analyzes Defendants' motion to dismiss and concludes dismissal of the claims against the Falics is warranted for lack of personal jurisdiction.

As a preliminary matter, Defendants object to the Declaration of Nicole Uhlig and attached exhibits filed in support of Plaintiffs' opposition to the motion to dismiss, on the grounds that that they are improper extrinsic evidence under Federal Rule of Evidence 608.

---

[2] Plaintiffs are domiciled in California. (FAC ¶ 1.) Holdings is a Delaware corporation with its headquarters allegedly in Florida. (*Id.*) Simon Falic is domiciled in Panama, and Leon and Jerome Falic are domiciled in Florida. (*Id.*) The amount in controversy exceeds $15 million. (*Id.* ¶ 3.)

1  In the context of a motion to dismiss under Rule 12(b)(2), the Court may consider
2  affidavits, along with the pleadings, to determine whether the plaintiff has made a prima
3  facie showing of personal jurisdiction. *See Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th
4  Cir. 2001); *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). Since
5  the Court does not reach Defendants' Rule 12(b)(6) argument, it need not consider
6  evidence for that purpose. Defendants' objections are overruled.

7  Turning to Defendant's motion to dismiss, Defendants maintain personal
8  jurisdiction is lacking over the Falics because Plaintiffs fail to show either that Holdings is
9  an alter ego of the Falics or that the Court has specific jurisdiction over the Falics. The
10 parties do not dispute that the Court has personal jurisdiction over Holdings.

11 On a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of
12 Civil Procedure 12(b)(2), the plaintiff bears the burden "to establish the district court's
13 personal jurisdiction over the defendant." *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell &
14 Clements Ltd.*, 328 F.3d 1122, 1128–29 (9th Cir. 2003). "Where, as here, the defendant's
15 motion is based on written materials rather than an evidentiary hearing, the plaintiff need
16 only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss."
17 *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing
18 *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)).
19 "Uncontroverted allegations in the complaint must be taken as true, and factual disputes
20 are construed in the plaintiff's favor." *Freestream Aircraft (Berm.) Ltd. v. Aero Law Grp.*,
21 905 F.3d 597, 602 (9th Cir. 2018) (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d
22 1007, 1019 (9th Cir. 2002)).

23 Because "California's long-arm statute allows courts to exercise personal
24 jurisdiction over defendants to the extent permitted by the Due Process Clause of the
25 United States Constitution[,]" this Court "need only determine whether personal
26 jurisdiction in this case would meet the requirements of due process." *Harris Rutsky*, 328
27 F.3d at 1129 (internal quotation marks and citation omitted). "For a court to exercise
28 personal jurisdiction over a nonresident defendant consistent with due process, that

defendant must have 'certain minimum contacts' with the relevant forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073–74 (9th Cir. 2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 216 (1945)).

Defendants contend first that Holdings is not an alter ego of the Falics and thus its contacts with California are not imputed to the Falics for the purposes of personal jurisdiction.

Generally, a corporation's contacts with a forum cannot be imputed to its owners or officers. *See Davis v. Metro Prods, Inc.*, 885 F.2d 515, 520 (9th Cir. 1989). However, "[t]he corporate form may be ignored in cases in which the corporation is an … alter ego of the individual defendant." *Id.* at 520–21. The alter ego exception allows for "imputed" general jurisdiction, in which the corporate entity's contacts with the forum state can be "fairly attributed" to its owners. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015) (citation omitted). To satisfy this test, the plaintiff "must make out a prima facie case (1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice." *Id.* at 1073 (internal quotation marks, alterations, and citations omitted). The first prong of this test "requires a showing that the [owner] controls the [corporate entity] to such a degree as to render the latter the mere instrumentality of the former." *Id.* (citation omitted). Because disregarding the corporate entity is an "extreme remedy" which will be done only "in exceptional circumstances," plaintiffs who invoke the alter ego theory to assert personal jurisdiction have a "slightly higher burden." *TV Ears, Inc. v. SYK Grp., LLC*, No. 16CV867-GPC(WVG), 2016 WL 6248539, at *5 (S.D. Cal. Oct. 26, 2016) (citing *Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995).

Here, Plaintiffs contend the Falics control Holdings and are its sole members, officers, and owners. (Pls.' Opp'n 15 (citing Decl. of Leon Falic ¶ 1; Decl. of Simon Falic ¶ 1; Decl. of Jerome Falic ¶ 1).) Plaintiffs further allege on information and belief that Holdings is undercapitalized and lacks sufficient capital to consummate the LOI

transaction, that its corporate separateness from the Falics has not been respected, and that "it would be inequitable to shield the Individual Defendants from Holdings' liability by reason of Holdings' corporate shield." (FAC ¶ 9.)

In support of their argument, Plaintiffs allege the individual Falics held themselves out as the actual purchasers of the F&S stock under the LOI, even though the LOI named Holdings as the buyer. (FAC ¶ 10.) Plaintiffs further point to the Falics' attempt as individuals to purchase F&S in 2005, their purchase of 20% of F&S's stock in 2015 as individuals, their individual signatures on the LOI, and their designation as buyers in the draft Definitive Agreement. (*Id.*)

Defendants argue Plaintiffs' allegations on information and belief are insufficient to establish that Holdings is the Falics' alter ego. Defendants contend the Falics' actions of individually purchasing 20% of the stock in F&S, forming Holdings around the same time, and planning to have Holdings purchase the remaining 80% of stock through the 2020 LOI, do not establish alter ego liability.

The Court agrees with Defendants. Plaintiffs' conclusory allegations are insufficient to justify piercing the corporate veil to exercise personal jurisdiction over the Falics. *See Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1040 (N.D. Cal. 2014). The Falics' ownership and control of Holdings alone do not establish the requisite level of control for alter ego jurisdiction. *See Ranza*, 793 F.3d at 1073. Plaintiffs contend the Falics are financially liable for Holdings, but Plaintiffs fail to offer any evidence to support this contention beyond the Falics' varying levels of individual involvement in the purchase of F&S stock, and Plaintiffs do not articulate how the terms of the 2015 purchase agreement commingle funds. (Pls.' Opp'n 17; FAC ¶ 10; Decl. of Nicole Uhlig ¶ 6.) Plaintiffs do not plead any specific facts that show Holdings is undercapitalized. To the contrary, Holdings paid $1.5 million into escrow under the terms of the LOI. (Decl. of Nicole Uhlig ¶ 10.) Nor do Plaintiffs present evidence that Holdings fails to observe other corporate formalities, such as maintaining records and documenting transactions. *See Ranza*, 793 F.3d at 1074 (finding no alter ego where plaintiff presented no evidence that subsidiary was

undercapitalized, lacked adequate records, or that parent freely transferred its assets, which would be "signs of a sham corporate veil"). Neither the FAC nor Plaintiffs' opposition provides sufficient facts to support the alter ego theory of personal jurisdiction over the Falics.

Next, Defendants argue Plaintiffs fail to make a prima facie showing that the Falics are subject to specific jurisdiction in California.[3] "Specific jurisdiction … depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citations omitted). The Ninth Circuit has established a three-prong test for determining whether a court may exercise specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). This "minimum contacts" test " 'ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts[.]' " *Freestream Aircraft*, 905 F.3d at 602 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Each defendant's contacts with the forum State must be assessed individually." *Davis*, 885 F.2d at 521 (quoting

---

[3] Plaintiffs do not contend that the Falics are subject to general jurisdiction in California other than through their alter ego theory. General jurisdiction exists when a defendant's "continuous and systematic" contacts with the forum state render him essentially "at home" there. *See Daimler AG v. Bauman*, 571 U.S. 117, 134 (2014).

*Calder v. Jones*, 465 U.S. 770, 790 (1984)). For purposes of personal jurisdiction, the Supreme Court has rejected the notion "that employees who act in their official capacity are somehow shielded from suit in their individual capacity." *Id.* (quoting *Calder*, 465 U.S. at 781 n.13).

First, Plaintiffs contend the Falics purposefully availed themselves of California laws through the LOI. Although Plaintiffs are correct that the LOI contemplates enforcement of its provisions in California, the Falics are not parties to the LOI. (*See* Ex 1 to FAC.) As officers of Holdings, the Falics signed the LOI, but the LOI does not name them individually as buyers. (*See id.*) Rather, the LOI states "Fairn & Swanson Holdings, Inc." is the sole "Buyer." (*Id.*) "A corporate officer does not become a party to the contract simply by 'signing it in the officer's representative capacity.' " *In re Boon Glob. Ltd.*, 923 F.3d 643, 651 (9th Cir. 2019) (quoting Restatement (Third) of Agency § 6.01). Plaintiffs' reliance on *Roth v. Garcia Marquez*, 942 F.2d 617 (9th Cir. 1991), and *Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990), is inapposite. In *Roth*, the defendant who contested personal jurisdiction was a party to the alleged contract, unlike here. *See* 942 F.2d at 620–21. In *Sher*, which involved a malpractice action against a Florida law firm, the Ninth Circuit found the *partnership* availed itself of California law. 911 F.2d at 1363. But the court found the plaintiff failed to establish a prima facie case of jurisdiction over the individual partners, even where one defendant traveled to California on three occasions in connection with the partnership's representation of the plaintiff. *Id.* at 1364 ("Even this action … , when combined with the firm's underlying representation of a California client, does not constitute purposeful availment of the privilege of conducting activities within California."). Similarly, here, the terms of the LOI, which apply to Holdings, do not subject the Falics to personal jurisdiction in California.

Plaintiffs nevertheless contend that the overall business relationship between Plaintiffs and the Falics involving F&S renders the Falics subject to specific jurisdiction in California, relying on *Global Commodities Trading Group., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101 (9th Cir. 2020). Plaintiffs' argument is unpersuasive. In

*Global Commodities*, the Ninth Circuit found specific jurisdiction over a corporation's officers based on their "extensive contacts" with California in a "years-long business relationship" involving hundreds of contracts and millions of dollars of goods. *Id.* at 1108, 1110. The individual defendants met with the plaintiff's employees in California to negotiate the transactions at issue in the suit and had "previously traveled to California on multiple occasions as part of the ongoing business relationship" between the two companies. *Id.* Moreover, the individual defendants signed a personal guaranty, which subjected them to personal jurisdiction. *Id.* (noting corporate officer who personally guarantees a corporation's obligation "interject[s] himself into the transaction" (quoting *Forsythe v. Overmyer*, 576 F.2d 779, 783 (9th Cir. 1978)).

Here, the Falics signed no such personal guaranty for any debt of Holdings. Nor did any of the Falics travel to California in connection with the LOI negotiations or the transaction at issue here.[4] (Decl. of Leon Falic ¶¶ 7–8; Decl. of Simon Falic ¶ 7; Decl. of Jerome Falic ¶ 7.) *Cf. Davis*, 885 F.2d at 522–23 (holding two corporate officers had sufficient contacts with Arizona when they conducted meetings with clients in Arizona and ultimately entered into six agreements with Arizona residents on behalf of the corporation). The individual Falics did have previous business dealings involving F&S: the 2015 stock purchase and the 2005 attempted purchase. (Decl. of Nicole Uhlig ¶¶ 5–6). But these interactions do not rise to the level of the years-long closely intertwined business relationship that supported the exercise of personal jurisdiction in *Global Commodities*, especially given the Falics' lack of travel to California in connection with these dealings and the fact that Plaintiffs' suit does not allege any breach of the 2015 stock purchase contract. As *Global Commodities* reiterates, although individuals' status as corporate officers may give rise to personal jurisdiction over them, it does not guarantee it. *Id.* at

---

[4] The only in-person meetings concerning the transaction took place in Miami, Florida, and Las Vegas, Nevada. (Decl. of Leon Falic ¶ 8.)

1109. The Falics' actions here are insufficient to support the Court's exercise of personal jurisdiction over them.

Plaintiffs' remaining claimed bases for the exercise of personal jurisdiction over the Falics are likewise unavailing. Plaintiffs argue the Falics submitted to California jurisdiction under the terms of the draft "Definitive Agreement," but this draft agreement, which the Falics did not sign, is insufficient to establish personal jurisdiction. *See Jorio v. Benmansour*, No. 15-CV-00063 NC, 2015 WL 12829619, at *2 (N.D. Cal. Aug. 25, 2015) (finding unsigned draft contract "does not constitute either proof of an enforceable contract or conduct by [defendant] sufficient for this Court to exercise specific personal jurisdiction over him"). Plaintiffs' claim that the Falics are assignees of Holdings' rights similarly fails, as Plaintiffs point only to a generic assignment clause in the LOI and language in the unsigned draft agreement. (*See* Ex. 1 to FAC, § 7(c); Ex. 7 to FAC.) This is insufficient to establish that Holdings assigned its rights under the LOI to the Falics, and in any event, "the contacts of a contracting party are not imputed to an assignee or third-party beneficiary under a minimum contacts analysis." *Allied Professionals Ins. Co. v. Anglesey*, No. CV 14-00665 CBM, 2018 WL 6219926, at *8 (C.D. Cal. Aug. 10, 2018), *aff'd and remanded*, No. 18-56513, 2020 WL 1179772 (9th Cir. Mar. 12, 2020).

The Court finds Plaintiffs have not established the requisite minimum contacts between the Falics and California, nor have Plaintiffs established that their claims arise out of any such contacts. Thus, Plaintiffs have failed to satisfy either the first or second prong of the specific jurisdiction test. In the absence of this showing, the Court need not consider whether the exercise of jurisdiction would be reasonable. *See Harris Rutsky*, 328 F.3d at 1132 (stating burden shifts to defendant to show exercise of jurisdiction would be unreasonable, but only after plaintiff establishes minimum contacts).

There is no basis for the Court to exercise personal jurisdiction over the Falics. Accordingly, Plaintiffs' claims against the Falics are dismissed. The Court therefore need

not reach Defendants' motion to dismiss Count III for failure to state a claim under the economic loss rule and Rule 9(b).[5]

### III.
### CONCLUSION AND ORDER

For the reasons set out above, Defendants' motion to dismiss is GRANTED. Plaintiffs' claims against the Falics are dismissed with prejudice. Plaintiffs' first and second causes of action may proceed against Holdings.

**IT IS SO ORDERED**.

Dated:  November 23, 2020

Hon. Dana M. Sabraw
United States District Judge

---

[5] While Counts I and II allege breach of contract by all defendants, Count III alleges fraud by the Falics only.  (*See* FAC ¶¶ 26, Prayer for Relief D.)  Since the Court lacks personal jurisdiction over the Falics, Count III is dismissed.