# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICOLE UHLIG and MICHELLE STOLDT, as Trustees of (1) the Survivor's Trust Established Under the Wolfgang and Elke Uhlig Revocable Living Trust U/A/D April 16, 1998; (2) the Marital GST Non-Exempt Trust Established Under the Wolfgang and Elke Uhlig Revocable Living Trust U/A/D April 16, 1998, as Amended; (3) the Marital GST Exempt Trust Established Under the Wolfgang and Elke Uhlig Revocable Living Trust U/A/D April 16, 1998, as Amended; and (4) the Bypass Trust Established Under the Wolfgang and Elke Uhlig Revocable Living Trust U/A/D April 16, 1998, as Amended, | Case No.: 20-cv-00887-DMS-MSB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |
| Plaintiffs, | |
| v. | |
| FAIRN & SWANSON HOLDINGS, INC., a Delaware corporation; LEON FALIC, an individual; SIMON FALIC, an individual; JEROME FALIC, an individual; | |
| Defendants. | |

1

1   Pending before the Court is Defendant Fairn & Swanson Holdings, Inc.'s motion to

2   dismiss Counts III and V of Plaintiffs' Second Amended Complaint ("SAC").  Plaintiffs

3   filed an opposition to the motion, and Defendant filed a reply.  For the reasons discussed

4   below, the motion is granted.

5                                          **I.**

6                                    **BACKGROUND**

7   This case arises out of a Letter of Intent ("the LOI") entered into between Plaintiffs[1]

8   and Defendant Fairn & Swanson Holdings, Inc. ("Defendant" or "Holdings") in March

9   2020.  (SAC ¶ 4; Ex. 1 to SAC.)  Under the terms of the LOI, Plaintiffs agreed to convey

10  to Holdings 80% of the stock of Fairn & Swanson, Inc. ("F&S"), a closely held California

11  corporation, as well as all right, title, and interest in Plaintiffs' retail real property located

12  in Imperial County, California ("the Imperial County property").  (SAC ¶ 4.)  In return,

13  Holdings agreed to assume specified debts of F&S and to pay Plaintiffs $5 million.  (*Id.*)

14  The LOI provides that the parties will make good faith efforts to negotiate one or more

15  "Definitive Agreements" further detailing the terms of sale of stock and terms of the sale

16  of the real property, but expressly provides the LOI "is intended to be a binding contract"

17  and "is not contingent on the preparation of the Definitive Agreements."  (SAC ¶ 9; Ex. 1

18  to SAC, §§ 3, 7(c).)  The transaction was to close before the end of March 2020.  (SAC

19  ¶ 4; Ex. 1 to SAC, § 1(c).)

20  During the negotiations between Plaintiffs and Holdings leading up to the signing of

21  the LOI, F&S was in substantial financial distress and Plaintiffs were marketing their 80%

22

23  _____

24  [1] The Court refers to Plaintiffs Nicole Uhlig and Michelle Stoldt, as Trustees of (1) the
    Survivor's Trust Established Under the Wolfgang and Elke Uhlig Revocable Living Trust

25  U/A/D April 16, 1998; (2) the Marital GST Non-Exempt Trust Established Under the
    Wolfgang and Elke Uhlig Revocable Living Trust U/A/D April 16, 1998, as Amended; (3)

26  the Marital GST Exempt Trust Established Under the Wolfgang and Elke Uhlig Revocable
    Living Trust U/A/D April 16, 1998, as Amended; and (4) the Bypass Trust Established

27  Under the Wolfgang and Elke Uhlig Revocable Living Trust U/A/D April 16, 1998, as

28  Amended, as "Plaintiffs" throughout this Order.

1    stock holding interest to third parties.  (SAC ¶ 6.)  Upon signing the LOI, Plaintiffs

2    terminated all marketing efforts of F&S stock in accordance with the LOI's terms, which

3    they did with the understanding the LOI transaction would close "in the immediate future."

4    (*Id.* ¶¶ 6–7.)

5         On or about March 12, 2020, Holdings insisted the purchase price provided in the

6    LOI be substantially reduced.  (*Id.* ¶ 8.)  On March 16, 2020, Holdings refused to

7    consummate the transaction provided for in the LOI and refused to provide its promised

8    performance, including the purchase of F&S stock and the Imperial County property.  (*Id.*

9    ¶¶ 8, 10.)

10        Based on these allegations, Plaintiffs filed this diversity action against Holdings and

11   the Falics on May 12, 2020, and amended the complaint on August 17, 2020.  (ECF Nos.

12   1, 17.)  On November 23, 2020, the Court dismissed Leon Falic, Jerome Falic, and Simon

13   Falic as defendants.  (ECF No. 28.)  Defendant subsequently filed an answer to the FAC

14   and a counterclaim, which counterclaim Plaintiffs answered.  (ECF Nos. 29, 31.)  Plaintiffs

15   filed the SAC on March 10, 2021, alleging claims for (1) breach of contract (specific

16   performance), (2) breach of contract (damages), (3) breach of the covenant of good faith

17   and fair dealing, (4) promissory estoppel, and (5) fraud.[2]  (ECF No. 46.)  Defendant now

18   moves to dismiss Counts III and V of Plaintiffs' SAC for failure to state a claim.

19                                          **II.**

20                                   **LEGAL STANDARD**

21        A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

22   legal sufficiency of the claims asserted in the complaint.  Fed. R. Civ. P. 12(b)(6); *Navarro*

23   *v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).  In deciding a motion to dismiss, all material

24   factual allegations of the complaint are accepted as true, as well as all reasonable inferences

25   to be drawn from them.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996).

26

27   _____

28   [2] The Court has diversity jurisdiction over this action as the parties are citizens of different
     states and the amount in controversy exceeds $75,000.  (SAC ¶¶ 1, 3.)

1    A court, however, need not accept all conclusory allegations as true.  Rather, it must

2    "examine whether conclusory allegations follow from the description of facts as alleged by

3    the plaintiff."  *Holden v. Hagopian*, 978 F.3d 1115, 1121 (9th Cir. 1992) (citation omitted).

4    A motion to dismiss should be granted if a plaintiff's complaint fails to contain "enough

5    facts to state a claim to relief that is plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

6    570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that

7    allows the court to draw the reasonable inference that the defendant is liable for the

8    misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550

9    U.S. at 556).

10                                          **III.**

11                                    **DISCUSSION**

12           Defendant moves to dismiss Plaintiffs' claim for breach of the covenant of good

13    faith and fair dealing and Plaintiffs' claim for fraud.  The Court addresses the parties'

14    arguments regarding each claim in turn.

15    **A. Breach of the Covenant of Good Faith and Fair Dealing**

16           Defendant argues Plaintiffs' claim for breach of the covenant of good faith and fair

17    dealing is barred because it is duplicative of Plaintiff's breach of contract claim.  In

18    California, the covenant of good faith and fair dealing is "implied by law in every contract"

19    and exists "to prevent one contracting party from unfairly frustrating the other party's right

20    to receive the benefits of the agreement actually made."  *Guz v. Bechtel Nat. Inc.*, 8 P.3d

21    1089, 1110 (2000).  Where an implied covenant claim seeks the same relief and relies on

22    the same alleged acts as a breach of contract claim, it may be disregarded as superfluous.

23    *Svenson v. Google Inc.*, 65 F. Supp. 3d 717, 725 (N.D. Cal. 2014) (citing *Careau & Co. v.*

24    *Sec. Pac. Bus. Credit, Inc.*, 272 Cal. Rptr. 387, 400 (Cal. Ct. App. 1990).

25           Here, Plaintiffs have not pled sufficient facts to show their claim for breach of the

26    implied covenant is separate and distinct from their breach of contract claim.  The LOI

27    expressly provides the parties "will make a good faith effort to negotiate and enter into

28    definitive agreements."  (Ex. 1 to SAC, § 3.)  Under the implied covenant claim, Plaintiffs

1  allege Holdings refused to negotiate in good faith, because it demanded the purchase price

2  in the LOI be reduced, then "refused to consummate the transaction," thereby unfairly

3  interfering with Plaintiffs' right to receive the LOI's benefits.  (SAC ¶¶ 24, 25.)  These

4  alleged acts are the same acts which Plaintiffs rely upon in support of their breach of

5  contract claim, which is likewise based on Defendant's "refus[al] to provide its promised

6  performance, including the purchase of F&S stock and the Imperial County property." (*Id.*

7  ¶ 10.)  "A claim for breach of the implied covenant may be made out by allegations that a

8  defendant acted in bad faith to frustrate the agreed common purpose of the contract,"

9  *Svenson*, 65 F. Supp. 3d at 725–26 (citing *Careau & Co.*, 272 Cal. Rptr. at 399–400), but

10  Plaintiffs here fail to allege facts to show Defendant acted in bad faith.

11  Plaintiffs further do not sufficiently allege damages independent from those alleged

12  for breach of contract.  Plaintiffs argue Defendant's refusal to negotiate harmed Plaintiffs

13  because they were no longer able to sell their F&S stock to a third party, which led to F&S

14  filing a Chapter 7 bankruptcy proceeding.  (Pls.' Opp'n 5; SAC ¶ 26.)  Plaintiff alleges the

15  same harm—the filing of a Chapter 7 bankruptcy proceeding—resulted from Defendant's

16  breach of contract.  (SAC ¶ 18.)  As currently pled, Plaintiffs' claim for breach of the

17  implied covenant of good faith and fair dealing is superfluous given Plaintiffs' claim for

18  breach of contract.  The Court therefore grants Defendant's motion to dismiss this claim.

19  **B. Fraud**

20  Defendant contends Plaintiffs' fraud claim is barred by the economic loss rule.  In

21  response, Plaintiffs argue their fraud claim is properly brought because they allege the LOI

22  was fraudulently induced.

23  Generally, purely economic losses are not recoverable in tort.  *NuCal Foods, Inc. v.*

24  *Quality Egg LLC*, 918 F. Supp. 2d 1023, 1028 (E.D. Cal. 2013) (citations omitted).  The

25  economic loss rule "prevents the law of contract and the law of tort from dissolving one

26  into the other." *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 273 (Cal. 2004)

27  (internal quotation marks, brackets, and citation omitted).  "[T]he fundamental rule in

28  California is that no tort cause of action will lie where the breach of duty is nothing more

1  than a violation of a promise which undermines the expectations of the parties to an

2  agreement." *Oracle USA, Inc. v. XL Glob. Servs., Inc.*, No. C 09-00537 MHP, 2009 WL

3  2084154, at *4 (N.D. Cal. July 13, 2009) (surveying California cases).  However, a fraud

4  claim related to a contract may be brought where the fraud is independent of the breach of

5  contract and "expose[s] a plaintiff to liability for personal damages independent of the

6  plaintiff's economic loss." *Robinson Helicopter*, 102 P.3d at 276 (permitting fraud claim

7  in products liability context); *see Erlich v. Menezes*, 981 P.2d 978, 983 (Cal. 1999).

8      Here, Plaintiffs allege Holdings knowingly made false promises to Plaintiffs in order

9  to induce Plaintiffs to remove F&S stock from the market and enter into the LOI.  Plaintiffs

10 argue their fraud claim is based on Holdings' intentional misrepresentation of its intent,

11 not on its breach of the LOI.  However, Plaintiffs fail to allege fraud independent of the

12 breach of contract.

13     Plaintiffs' theory of damages is that once F&S stock was removed from the market,

14 Holdings refused to perform on the contract, and that refusal, combined with "unusual

15 market forces," forced F&S out of business.  (Pls.' Opp'n 7.)   Plaintiffs have not

16 demonstrated how this would entitle Plaintiffs to any additional damages beyond their

17 economic losses from the breach of the LOI.  *See Oracle USA*, 2009 WL 2084154, at *6–7

18 (discussing *Robinson Helicopter* and concluding plaintiff failed to state a claim for fraud

19 where defendant "allegedly failed to keep its promise to pay its bills, and the resulting harm

20 to [plaintiff] is economic in nature"); *see Audigier Brand Mgmt. v. Perez*, No. CV 12-5687-

21 CAS RZX, 2012 WL 5470888, at *6 (C.D. Cal. Nov. 5, 2012) ("Without a viable theory

22 of damage apart from plaintiff's economic losses, plaintiff fails to state an actionable claim

23 for fraud.").  Plaintiffs allege F&S' bankruptcy constitutes harm independent of the breach

24 of contract.  But Plaintiffs do not sufficiently allege how Plaintiffs' inability to sell the

25 stock and F&S' resulting bankruptcy stem from anything other than Holdings' refusal to

26 complete the transaction and purchase the stock.

27     The Court finds Plaintiffs have not alleged conduct "independent from the various

28 promises made by the parties in the course of their contractual relationship." *Oracle USA*,

6

20-cv-00887-DMS-MSB

2009 WL 2084154, at *4.  Although Plaintiffs allege they ceased their marketing efforts of F&S stock in reliance on Defendant's promise to purchase it, this cessation was an express condition of the LOI.  (*See* Ex. 1 to SAC, § 5.)  The Court is not persuaded that Plaintiffs' own performance under the contract provides a sufficient basis for their fraud claim.  *See JMP Sec. LLP v. Altair Nanotechnologies Inc.*, 880 F. Supp. 2d 1029, 1043 (N.D. Cal. 2012) (dismissing fraud claim where plaintiff's allegations of reliance were simply "acts constitut[ing] nothing more than [plaintiff's] usual performance").

The Court accordingly follows other district courts applying California law which have found similar tort claims "barred in cases in which one party breached a purported contract that it allegedly never intended to perform." *UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1104 (C.D. Cal. 2015) (citing *JMP Sec.*, 880 F. Supp. 2d at 1042–43; *Oracle USA*, 2009 WL 2084154, at *4).  Plaintiffs attempt to distinguish these cases, but point to no case supporting their position in which a similar claim of fraud was permitted to proceed.  Rather, Plaintiffs seek to take "allegations underpinning a straightforward claim for breach of a commercial contract and recast them as torts," but their "claims consist of nothing more than [Defendant's] alleged failure to make good on its contractual promises." *JMP Sec.*, 880 F. Supp. 2d at 1043.  Accordingly, Plaintiffs' fraud claim must be dismissed under the economic loss rule.

Moreover, Defendant argues even if Plaintiffs' fraud claim were not barred under the economic loss rule, it is not alleged with sufficient particularity as required under Federal Rule of Civil Procedure Rule 9(b).  Rule 9(b) imposes a heightened pleading standard on claims alleging fraud, requiring a plaintiff to state with "particularity the circumstances constituting the fraud or mistake." Fed. R. Civ. P. 9(b); *see Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) ("Rule 9(b)'s particularity requirement applies to state-law causes of action.").

"To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud

1  charged so that they can defend against the charge and not just deny that they have done

2  anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Bly-*

3  *Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks

4  omitted).   A plaintiff must set forth "the who, what, when, where, and how of the

5  misconduct charged."   *Vess*, 317 F.3d at 1106 (internal quotation marks and citation

6  omitted).

7       Here, although Plaintiffs identify several dates on which Leon Falic, an agent of

8  Holdings, made statements regarding the marketing of F&S stock, Plaintiffs do not

9  adequately allege why Holdings' promise to purchase the stock was false when made.

10  Plaintiffs' allegation that Holdings had no intent to actually consummate the transaction at

11  the time it entered into the LOI is conclusory and unsupported by facts.   "Although intent

12  can be averred generally under Rule 9(b), a plaintiff must point to facts which show that

13  defendant harbored an intention not to be bound by terms of the contract at formation."

14  *Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. CV 07-CV-912 IEG-BLM, 2007

15  WL 2206946, at *6 (S.D. Cal. July 27, 2007) (quoting *Hsu v. OZ Optics Ltd.*, 211 F.R.D.

16  615, 620 (N.D. Cal. 2002) (internal quotation marks omitted)).   "Mere nonperformance of

17  a promise does not suffice to show the falsity of a promise."   *UMG Recordings, Inc.*, 117

18  F. Supp. 3d at 1108 (citing *Tenzer v. Superscope, Inc.*, 702 P.2d 212, 219 (Cal. 1985)); *see*

19  *Smith v. Allstate Ins. Co.*, 160 F. Supp. 2d 1150, 1153 (S.D. Cal. 2001) (merely alleging

20  that defendant breached a contract did not adequately plead that it entered into the

21  agreement with no intent to perform).   Thus, Plaintiffs' fraud claim must also be dismissed

22  as insufficiently pled.

23   **C. Leave to Amend**

24       Generally, when a court dismisses claims, leave to amend is granted "even if no

25  request to amend the pleading was made, unless [the court] determines that the pleading

26  could not possibly be cured by the allegation of other facts."   *Lopez v. Smith*, 203 F.3d

27  1122, 1127 (9th Cir. 2000) (en banc) (internal citation omitted).

28

1    Here, the deficiencies in Plaintiffs' claims could potentially be cured. Plaintiffs may
2  be able to identify facts that show that Defendant took actions in bad faith distinct from
3  those underlying the breach of contract claim, or to allege facts to support fraud and
4  damages independent of their contract claim.   Accordingly, the Court grants leave to
5  amend.

6  ### IV.

7  ### CONCLUSION AND ORDER

8    For the reasons set out above, Defendant's motion to dismiss Counts III and V of the
9  SAC is granted. Plaintiffs may file a Third Amended Complaint within fourteen (14) days
10  of this order.

11    **IT IS SO ORDERED**.

12  Dated:  May 22, 2021

13

14  Hon. Dana M. Sabraw, Chief Judge
United States District Court

15

16

17

18

19

20

21

22

23

24

25

26

27

28

20-cv-00887-DMS-MSB